IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK MCCAULEY,                                      3:11-CV-01554-BR

       Plaintiff,

                                        OPINION AND ORDER

v.

ASML US, INC., a foreign
corporation,

       Defendant.


**RALPH F. RAYBURN**
4905 S.W. Griffith Drive
Suite 105
Beaverton, OR 97005
(503) 968-5820

       Attorney for Plaintiff

**AMY JOSEPH PEDERSON**
**ANDREA H. THOMPSON**
900 S.W. Fifth Avenue
Suite 2600
Portland, OR 97204
(503) 294-9408

       Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Mark McCauley's Motion (#25) for [Partial] Summary Judgment and Defendant ASML US Inc.'s Motion (#30) for Partial Summary Judgment. For the reasons that follow, the Court **DENIES** Plaintiff's Motion and **DENIES** Defendant's Motion.


## BACKGROUND

The following facts are undisputed unless otherwise noted.

In February 1998 Silicon Valley Group hired Plaintiff Mark McCauley as a CS Supervisor. Defendant ASML US, Inc., acquired Silicon Valley Group in 2000 and retained Plaintiff as a CS Supervisor. Scott Kistler was Plaintiff's supervisor when he was employed by Silicon Valley Group and by Defendant.

In his position as CS Supervisor, Plaintiff received annual performance reviews that awarded point scores in each of several categories yielding a cumulative total. Employees' performance could be rated as unclassified (0-9 points), unsatisfactory (10-24 points), below requirements (25-34 points), meets requirements (35-44 points), above requirements (45-54 points), or outstanding (55 points or above). From 1998 to 2008 Plaintiff's performance reviews were conducted and scored by Kistler. In 2005, 2006, and 2007 Plaintiff received cumulative scores of 45 or 46 points and a total performance rating of

2 - OPINION AND ORDER

"above requirements."  In 2008 Plaintiff received a cumulative score of 44 points for a total performance rating of "meets requirements."

In 2008 Plaintiff supervised a number of ASML on-site engineers who worked at two Intel sites:  Fab 20 and D1C.  In mid-2009 Fab 20 closed, and Plaintiff supervised only the ASML on-site engineers at the D1C site.

In March 2009 Gregory Cole became the Regional Customer Support Manager in the Hillsboro, Oregon, area and Plaintiff's supervisor.  Gary Mellville, Defendant's Director of Customer Support for the Western United States, testified at deposition that he removed Kistler as Defendant's Regional Customer Support Manager in the Hillsboro area because "the performance of the equipment at the Intel site wasn't meeting expectation.  And [Defendant] needed to have a change to set up some structure to be able to operate in a . . . new product environment."  Decl. of Amy Joseph Pedersen, Ex. 14 at 2.

Cole testified at deposition that he changed several operating procedures when he became the Regional Customer Support Manager, including approval of overtime.  Specifically, Cole testified Kistler generally had not restricted overtime by engineers.  Cole's policy, "especially in 2009 [and] when we were in a serious [economic] downturn, was that prior to working any . . . overtime the engineers had to get approval."  Decl. of

Ralph Rayburn, Ex. C at 6.  "During the worst of the downturn,"
Cole asked supervisors to get approval from Cole personally
before approving engineers to work overtime.  Rayburn Decl., Ex.
C at 6-7.

In 2009 ASML's service contract with Intel changed for the
D1C site and the number of ASML engineers working at the D1C site
decreased.

On January 30, 2010, Cole conducted and scored Plaintiff's
2009 performance evaluation and gave Plaintiff a cumulative
score of 35 points for a total performance rating of "meets
requirements."

In November 2010 Plaintiff attended Defendant's supervisor
training in Tempe, Arizona, that included a Managers Workshop led
by Lindsey Owen, a Human Resources Representative.  During the
workshop Plaintiff was involved in a heated argument with another
manager, Pete Moring.  Owen reported Plaintiff told Moring "don't
come to Hillsboro," which Owen perceived as a threat by
Plaintiff.  As a result, Owen contacted Plaintiff about being
coached on appropriate, professional communication.  At Owen's
direction, Plaintiff sent Moring an apology on December 3, 2010,
in which Plaintiff stated in pertinent part:

> Hoping that you'll accept my apology for the poor
> behavior and choice of words that I used
> responding to your input during our Managers Work
> Shop, Wed. (Nov-3rd).
>
> Wanted to let you know that it's not normal for me

> to lash out the way I did.  I put a lot of energy
> into maintaining a constructive working
> relationship and build up the self-esteem of all
> co-workers.

Pederson Decl., Ex. 11.

On December 16, 2010, a tool at D1C stopped working.  The tool was down for weeks and resulted in an "escalation" at the site and a number of complaints to Cole by Robert Lindstedt, Intel's Lithography Department Area Manager in D1C.

On January 13, 2011, Defendant held a "post-mortem" meeting with Intel to discuss the December 2010 escalation.  Plaintiff, Cole, Mellville, and Lindstedt, among others, attended the meeting.  Mellville testified at deposition that he had concerns about Plaintiff's performance at the post-mortem meeting.  In particular, Mellville believed there were inaccuracies in the materials presented by Plaintiff, Plaintiff attempted to discuss irrelevant issues, and Plaintiff "kept wanting to drill into a lot of detail, which seemed to be inappropriate."  Pedersen Decl., Ex. 14 at 5.

At some point Mellville communicated to Cole that he was unhappy with Plaintiff's performance at the post-mortem meeting, he did not believe Plaintiff had been well-prepared, he was

> embarrassed by [Plaintiff's] reactions to the
> meeting, and . . . [Cole] needed to work with
> [Plaintiff] to get him into an idea of
> understanding how to answer the questions that a
> customer is asking without diving into details.
> And basically not pleased with the overall
> performance of the post-mortem event itself.

5 - OPINION AND ORDER

Pedersen Decl., Ex. 14 at 6.  At deposition Mellville concluded
Plaintiff "could have performed admirably during the escalation,
but there was no admirably during the post-mortem review with the
customer."  *Id*.

On January 14, 2011, Owen emailed Cole and inquired about
the "status of the McCauley documentation."  Pedersen Decl.,
Ex. 15.  In particular Owen requested Cole to provide
"information regarding any performance or coaching discussions
[Cole] had with [Plaintiff] in 2010, [Plaintiff's] 2010 review,
and the documentation on the customer complaints."  *Id*.

On January 18, 2011, Cole forwarded to Owen an email
complaint from Intel related to an issue at D1C and noted:

> I hate building pearl harbor files, but this part
> is still not at the fab and all I am getting is
> excuses.  This illustrates the lack of effective
> planning and/or no sense of urgency [by Plaintiff]
> . . . .  I have other examples from over the year
> if I ever get the time. . . .  I had to put
> another engineer in charge of getting this done.

Pedersen Decl., Ex. 16.

On January 19, 2011, Cole wrote an email to the file in
which he noted:

> Today, during a call with D1C, [Plaintiff]
> attempted to bring up what he felt was an issue
> with the way passdown was done this morning.  His
> attempt was to lodge a complaint and inform Intel
> this was not how ASML would agree to do passdowns.
> I stopped this attempt and tried to discuss with
> [Plaintiff] . . . that this was not the audience
> nor the time. . . .  He did not seem to understand
> that his attempt to bring controversy into an
> already intense escalation was inappropriate.

Pedersen Decl., Ex. 17.

On January 24, 2011, Plaintiff submitted a Time Off Request (TOR) form to Cole requesting vacation time for the week of February 15, 2011, and noting "time off is needed to provide medical care."

On January 29, 2011, Cole conducted and scored Plaintiff's 2010 performance evaluation and gave Plaintiff a cumulative score of 35 points for a total performance rating of "meets requirements."  Cole, however, noted with respect to "customer interface/communication," Plaintiff

> needs to improve in this area and needs attention
> on this.  He does not come across very
> professionally to the customer, does not instill a
> sense of confidence when relating information and
> updates.  Mark also needs to work on instilling a
> sense of urgency when escalations come up.  The
> customer does net feel that [Plaintiff] portrays
> this urgency and has commented such on numerous
> occasions.  He also needs to make sure his
> responses are appropriate to the Issues being
> discussed and keep emotions out of the discussion.

Rayburn Decl., Ex. B at 44.  As to service administration, Cole noted Plaintiff "also needs to work on this area.  His weekly notes for the site need to be simplified and he should insure that he has updates and knows the material prior to meetings." Rayburn Decl., Ex. B at 45.  Cole also noted Plaintiff "quite often delays his work on important tasks until the last minute which only serves to increase his stress level" and needed to work on "[r]ealizing that there are times when controversial

7 – OPINION AND ORDER

subjects should be left for another time."  Rayburn Decl., Ex. B
at 47.

On January 29, 2011, Plaintiff made several comments in his
log book related to his 2010 performance evaluation that included
17 points on which he believed his performance evaluation was
incorrect.

On January 31, 2011, Cole emailed Owen and advised her that
Defendant received a complaint from Intel regarding Plaintiff in
which Intel communicated:

> 1.  [Plaintiff] does not display a sense of
> urgency when serious issues arise.
>
> * * *
>
> 2.  That escalations do not happen until I get
> involved.
>
> * * *
>
> 3.  That they do not have confidence in
> [Plaintiff] or his ability to supervise the site.

Pedersen Decl., Ex. 20.  Cole noted he did not disagree with most
of Intel's complaints; for example, "the recent post mortem
report . . . was very late and had to be rushed to complete
because the report had to be essentially rewritten.  I also have
little confidence in the reports or information I am receiving
from [Plaintiff]."  Id.

Plaintiff called in sick to work and left messages for Cole
to that effect from January 31, 2011, through February 3, 2011.
On February 4, 2011, Plaintiff provided Cole with a note from his

8 - OPINION AND ORDER

doctor explaining that Plaintiff should be excused from work from January 31 to February 3, 2011, due to issues with Plaintiff's medications.  On February 4, 2011, Plaintiff resubmitted to Cole his TOR form by email for the week of February 14, 2011. Plaintiff also submitted a TOR form in the same email for vacation time from March 28, 2011, to April 8, 2011.  Cole approved Plaintiff's request for time off during the week of February 14, 2011.

On February 8, 2011, Owen emailed Cole and requested they discuss the comments that Plaintiff put in his log book.  Owen noted

> [i]n looking at the development pipeline it seems
> as though [Plaintiff] doesn't have insight into
> the big picture nor his performance.  Also, he
> doesn't seem to take accountability for what he
> has control over and his role in his position.
> What are your thoughts on his 17 points?  What is
> his responsibility in these issues?

Pedersen Decl., Ex. 8 at 1.

On February 11, 2011, Cole sent Plaintiff an email providing responses to Plaintiff's comments in his log book.  Cole concluded "there seems to be a disconnect between what [Plaintiff] sees as the normal job requirements for a supervisor and what ASML expects.  We will sit to discuss this further and develop a performance improvement plan for yourself."  Pedersen Decl., Ex. 7 at 3.

On February 17, 2011, Cole drafted a Performance Improvement

9 - OPINION AND ORDER

Plan (PIP) for Plaintiff that addressed four areas of concern and included six specific ways in which Defendant expected Plaintiff to improve his performance.  Cole concluded

> This situation . . . has become very serious and a concerted effort on your part is necessary. Please assist ASML in helping improve your performance to the level where the current high-level of oversight is not required.  Failure to show immediate and sustained improvement will result in additional corrective action up to and including termination.  We will meet again in thirty days on March 28 to review your progress.

Pedersen Decl., Ex. 5 at 2.

Cole approved Plaintiff's TOR request for the week of February 15, 2011.  Accordingly, Plaintiff was out of the office from February 15, 2011, until February 21, 2011, and returned to work February 22, 2011.

On February 22, 2011, Plaintiff submitted an updated TOR form that included a range of "best/worst case" dates in March/April 2011 and noted he might "have to use sick time." Rayburn Decl., Ex. B at 184-85.

On February 23, 2011, Cole met with Plaintiff to discuss Plaintiff's TOR for time off in March and April 2011.  Cole testified at deposition that he asked Plaintiff why he needed the time off, clarified that Plaintiff was requesting time off to undergo medical testing, and requested more concrete dates so Cole could plan around Plaintiff's absence.  Plaintiff testified at deposition that he felt Cole was interrogating him about the

reason for his TOR and his medical condition and began "to undergo medical testing, and requested more concrete dates so Cole could plan around Plaintiff's absence.  Plaintiff testified at deposition that he felt Cole was interrogating him about the reason for his TOR and his medical condition and began "to belittle" Plaintiff by yawning and pretending to have a hard time staying awake.  Rayburn Decl., Ex. A at 30.

On Friday, February 25, 2011, Cole met with Plaintiff to discuss the PIP plan.  Plaintiff testified at deposition that Cole never gave him a copy of the PIP.  Cole, in turn, testified at deposition that he attempted to provide Plaintiff with a copy of the PIP, but Plaintiff refused to take it.  It is undisputed that the meeting became heated and both Plaintiff and Cole raised their voices.  Cole ended the meeting without completing any review of the PIP.

On February 25, 2011, Cole sent an email to Owen:

> I attempted to discuss the [PIP] this afternoon
> with [Plaintiff].  He got very animated a number
> of times during the conversation and I finally had
> to bring the discussion to a halt because
> [Plaintiff] was getting too excited for a positive
> conversation.  It is clear that [Plaintiff] does
> not recognize that his performance is sub-par.
>
>                     * * *
>
> I have had these conversations with a number of
> employees over the years.  They are never
> pleasant, but I have never been in a situation
> where we could not calmly discuss the program
> . . . .  I have never had to call a halt to the
> proceedings, this is the second time I have had to

11 - OPINION AND ORDER

> do this with [Plaintiff] (also during his 2009
> review).  Considering the incident in Tempe, added
> to my experiences with [Plaintiff], I do not see a
> reason why we should attempt to proceed with the
> PIP.  It is clear that [Plaintiff] is not at all
> open to participating in an improvement program
> nor does he seem willing to be recognize [sic]
> their [sic] being any need for such a program.  I
> may make another attempt on Monday when he has had
> a chance to cool off, I don't feel there is much
> chance the results will be much different.  I feel
> that we will have to move forward with
> termination.

Pedersen Decl., Ex. 6.

On February 25, 2011, Owen forwarded Cole's email to Cindy

Wood[1] and noted

> Greg's conversation with [Plaintiff] did not go
> well.  [Plaintiff] seems incapable of having a
> discussion where he is given less than favorable
> feedback or where he disagrees.  What are your
> thoughts on termination?  If he is unwilling to
> accept the PIP, and improve his performance the[n]
> I think we need to terminate.

Pedersen Decl., Ex. 25 at 1.  Owen also forwarded Cole's email to

Mellville.  Mellville responded:  "Okay.  Termination is the next

step.  Should do it Monday!"  *Id.*  On February 28, 2011, Owen

emailed Cole and advised "[Mellville] is ready to term, and would

like it to happen today.  You should probably have security on

site in case [Plaintiff] gets volatile."  *Id.*

On February 28, 2011, Cole met with Plaintiff in Kistler's

office to terminate him.  Kistler and a security guard were also

---

[1] The parties do not identify Wood's position with
Defendant.

present.  Cole terminated Plaintiff's employment, and Plaintiff
was escorted from the building.

On November 23, 2011, Plaintiff filed an action in Multnomah
County Circuit Court against Defendant asserting claims for
violation of the Oregon Family Leave Act (OFLA), Oregon Revised
Statutes §§ 659A.171 and 659A.183; violation of the Family
Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*; disability
discrimination in violation of Oregon Revised Statute § 659A.112;
failure to pay overtime in violation of Oregon Revised Statute
§ 652.150; and wrongful termination.

On September 27, 2012, Plaintiff filed a Motion for
[Partial][2] Summary Judgment seeking judgment as to his claims
against Defendant for failure to pay overtime and for violation
of OFLA and FMLA.

On October 1, 2012, Defendant filed a Motion for Partial
Summary Judgment seeking judgment as to Plaintiff's claim for
failure to pay overtime.


## **STANDARDS**

Summary judgment is appropriate when "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." *Washington Mut. Ins. v. United*

---

[2] Although Plaintiff has not titled his Motion as "partial,"
his Motion does not include all of Plaintiff's claims against
Defendant.

13 - OPINION AND ORDER

*States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R.
Civ. P. 56(a).  The moving party must show the absence of a
genuine dispute as to a material fact.  *Emeldi v. Univ. of Or.*,
673 F.3d 1218, 1223 (9th Cir. 2012).  In response to a properly
supported motion for summary judgment, the nonmoving party must
go beyond the pleadings and point to "specific facts
demonstrating the existence of genuine issues for trial."  *In re
Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)
"This burden is not a light one. . . .  The non-moving party must
do more than show there is some 'metaphysical doubt' as to the
material facts at issue."  *Id*. (citation omitted).

    A dispute as to a material fact is genuine "if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d
1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all
reasonable inferences in favor of the nonmoving party.  *Sluimer
v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary
judgment cannot be granted where contrary inferences may be drawn
from the evidence as to material issues."  *Easter v. Am. W. Fin.*,
381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts
Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598
(9th Cir. 1982)).

    "A non-movant's bald assertions or a mere scintilla of

evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009)(citation omitted).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## PLAINTIFF'S MOTION (#25) FOR [PARTIAL] SUMMARY JUDGMENT

As noted, Plaintiff moves for summary judgment as to his claims against Defendant for violation of FMLA and OFLA and wrongful discharge.

## I.   Plaintiff's claims for violation of FMLA and OFLA

Plaintiff alleges Defendant both interfered with Plaintiff's ability to take family leave and terminated him in violation of FMLA and OFLA in retaliation for using family medical leave.

A.    The Law[3]

FMLA provides it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [FMLA]." 29 U.S.C. § 2615(a)(1).  When a plaintiff alleges retaliation for exercising his rights under FMLA, the Ninth Circuit has held such a claim is properly analyzed as an interference claim pursuant to 29 U.S.C. § 2615(a)(1).  *See Liu v. Amway Corp*, 347 F.3d 1125, 1135 (9th Cir. 2003)("[T]he statutory and regulatory language of FMLA makes clear that where an employee is subjected to negative consequences simply because he has used FMLA leave, the employer has interfered with the employee's FMLA leave rights" under § 2615(a)(1).).  "In contrast, [when] an employee is punished for *opposing* unlawful practices by the employer, the issue then becomes one of discrimination and retaliation" under § 2615(a)(2).  *Liu*, 347 F.3d at 1135 (emphasis in original).

As noted, Plaintiff alleges Defendant subjected him to "negative consequences" (*i.e.*, termination) because Plaintiff used FMLA leave.  Accordingly, the Court must analyze Plaintiff's claim as one for interference under § 2615(a)(1) of FMLA.

The Ninth Circuit has held the burden-shifting analysis

_____

[3] The parties agree Plaintiff's OFLA claims are subject to the same analysis as his FMLA claims pursuant to Oregon Revised Statute § 659A.186(2).  The Court's analysis of Plaintiff's FMLA claims, therefore, applies equally to Plaintiff's OFLA claims.

of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does
not apply to interference claims under § 2615(a)(1).  *Liu*, 347
F.3d at 1135.  When "an employee alleges that his or her FMLA
leave is impermissibly considered in the decision to terminate
him or her, this Circuit applies the standard set forth by the
[Department of Labor (DOL)] in 29 C.F.R. § 825.220(c)."  *Id.*

Under the DOL standard, an employee may prove his
employer interfered with the employee's right to take protected
leave by showing "by a preponderance of the evidence that [his]
taking of FMLA-protected leave constituted a negative factor in
the decision to terminate [him]."  This claim, like any ordinary
statutory claim, may be proven "by using either direct or
circumstantial evidence, or both."  *Bachelder v. Am. West
Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001).

Ultimately,

> [t]o prevail [in a FMLA claim], an employee
> must prove, as a threshold matter, that the
> employer violated § 2615 by interfering with,
> restraining, or denying his or her exercise
> of FMLA rights.  Even then, [the damages
> provision of FMLA,] § 2617, provides no
> relief unless the employee has been
> prejudiced by the violation.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

**B.  Analysis**

Plaintiff asserts he is entitled to summary judgment as
to his claims under FMLA and OFLA and points to the fact that he
was terminated within weeks of taking time off and requesting

17 - OPINION AND ORDER

further time off for medical reasons.  To support his position,
Plaintiff states that he believes Cole subjected him to intense
questioning as to his request for medical leave and mocked
Plaintiff by yawning and pretending to have a hard time staying
awake.

Defendant, in turn, contends Plaintiff's leave did not
play any part in its decision to terminate Plaintiff's
employment.  Defendant points to the fact that it received
complaints from Intel related to Plaintiff's performance,
including the January 2011 email complaint from Intel.  Defendant
also relies on the Declaration of Roger Lindstedt in which he
testifies he advised Cole:

> 3.   My biggest issue with [Plaintiff's]
> performance was that as ASML's site manager for
> D1C, he was not pushing his team to resolve
> problems quickly and he was not able to marshal
> the ASMI resources needed to resolve problems.
> [Plaintiff] was not able to marshal ASML employees
> with the correct expertise to solve problems with
> the very expensive equipment Intel purchases from
> ASML.  These shortcomings were particularly
> obvious in December 2010 and January 2011 in
> connection with the tool shutdown described in my
> deposition.  However, I had also seen these
> shortcomings on [Plaintiff's] part in the past.
>
> 4.   My second issue with [Plaintiff's]
> performance is that he did not appear strong
> technically.  [Plaintiff] rarely had much to offer
> from a technical standpoint.  If a technical
> problem or issue was being discussed, he was not
> able to offer a solution.  [Plaintiff] did not
> contribute to the solution, but frequently had
> excuses as to why a particular problem was
> occurring.

18 – OPINION AND ORDER

> 5.   My third issue with [Plaintiff's] performance
> was that he was regularly late to meetings.
> [Plaintiff] was frequently 15 or 20 minutes late
> to meetings and frequently had excuses, such as he
> went to the wrong building or the wrong floor or
> the wrong conference room.

Decl. of Robert Lindstedt at ¶¶ 3-5.

Defendant notes Plaintiff has not established that Human Resources knew Plaintiff had requested time off for medical reasons. Plaintiff testified at deposition that he "believed" he contacted Owen to notify her about his need for medical leave, but he "was not 100 percent sure." Owen, however, testified at deposition that she did not know Plaintiff had medical issues or that he had requested time off to address any such issues. Cole also testified at deposition that he did not forward any of Plaintiff's requests for leave to Owen or to anyone else at Human Resources. Accordingly, it is questionable whether Human Resources and/or Owen had any knowledge of Plaintiff's need for medical leave. When evaluating the comments that Plaintiff made in his log book, however, Owen noted:

> In looking at the development pipeline it seems as
> though [Plaintiff] doesn't have insight into the
> big picture nor his performance.  Also, he doesn't
> seem to take accountability for what he has
> control over and his role in his position.

Pedersen Decl., Ex. 8 at 1.

Defendant also notes it is undisputed that Mellville did not know Plaintiff had requested time off for medical reasons. Nevertheless, Mellville told Cole after the post-mortem

19 - OPINION AND ORDER

meetings that he was unhappy with Plaintiff's performance at the meeting, he did not believe Plaintiff had been well-prepared, and he was

> embarrassed by [Plaintiff's] reactions to the meeting, and . . . [Cole] needed to work with [Plaintiff] to get him into an idea of understanding how to answer the questions that a customer is asking without diving into details. And basically not pleased with the overall performance of the post-mortem event itself.

Pedersen Decl., Ex. 14 at 6.  As noted, Mellville made the final decision to terminate Plaintiff.  At deposition Mellville testified he based that decision on Plaintiff's poor performance at the post-mortem, Plaintiff's performance evaluations, and various reports of Plaintiff's behavior (including Plaintiff's heated argument during the training in Tempe).

The Court concludes on this record that Defendant has established a genuine dispute of material fact exists as to whether Defendant subjected Plaintiff to any negative consequences because he requested and took medical leave. Accordingly, the Court denies Plaintiff's Motion for [Partial] Summary Judgment as to Plaintiff's claims that Defendant violated FMLA and OFLA.

## II. Plaintiff's claim for wrongful discharge for taking leave for medical reasons.

Plaintiff asserts Defendant wrongfully discharged him for taking medical leave in violation of Oregon public policy.

20 - OPINION AND ORDER

A.   The Law

Under Oregon law "an employer may discharge an employee at any time, for any reason, unless doing so violates a contractual, statutory or constitutional requirement." *Yeager v. Providence Health Sys. Oregon*, 195 Or. App. 134, 140 (2004) (quotation omitted). *See also Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012)(same). The tort of wrongful discharge is a narrow exception to this general rule. *Yeager*, 195 Or. App. at 140.

Oregon courts have recognized two circumstances that give rise to the common-law tort of wrongful discharge: (1) discharge for exercising a job-related right of important public interest and (2) discharge for complying with a public duty. *Sheppard*, 694 F.3d at 1050-51, n.3. Examples of the first category include discharge for filing a worker's compensation claim, *Brown v. Transcon Lines*, 284 Or. 597 (1978), and resisting sexual harassment by a supervisor, *Holien v. Sears, Roebuck & Co.*, 298 Or. 76 (1984). Examples of the second category include discharge for serving on jury duty, *Nees v. Hocks*, 272 Or. 210 (1975); for reporting patient abuse at a nursing home, *McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or. App. 107 (1984); and for refusing to sign a false report regarding a fellow employee's work-related conduct, *Delaney v. Taco Time International Inc.*, 297 Or. 10 (1984).

> To prevail on a claim of wrongful discharge, a plaintiff "must establish a 'causal connection' between a protected activity and the discharge." *Estes*, 954 P.2d at 796-97 (quoting *Shockey v. City of Portland*, 313 Or. 414, 837 P.2d 505, 507 (1992)). A "causal connection" requires a showing that "the employee's protected activity [was] a substantial factor in the motivation to discharge the employee." *Id.* at 797 (internal quotation marks omitted). "[T]o be a substantial factor, the employer's wrongful purpose must have been a factor that made a difference in the discharge decision." *Id.* (internal quotation marks omitted).

*Sheppard*, 694 F.3d at 1051.

**B.   Analysis**

Plaintiff contends he was wrongfully discharged for requesting and/or taking medical leave. Plaintiff relies on the same facts and evidence to support his wrongful-discharge claim as he relies on for his FMLA and OFLA claims. For the same reasons that the Court concluded Defendant has established a genuine dispute of material fact exists as to Plaintiff's FMLA and OFLA claims, the Court concludes a genuine dispute of material fact exists that precludes summary judgment as to Plaintiff's claim for wrongful discharge.

Accordingly, the Court denies Plaintiff's Motion for [Partial] Summary Judgment as to Plaintiff's wrongful-discharge claim.

<u>**DEFENDANT'S MOTION (#30) FOR PARTIAL SUMMARY JUDGMENT**</u>

Defendant moves for summary judgment as to Plaintiff's claim against Defendant for failure to pay overtime in violation of Oregon's wage-and-hour laws and as to that portion of Plaintiff's wrongful-discharge claim related to Defendant's alleged failure to pay overtime.

**I.    Plaintiff's claim for failure to pay overtime in violation of Oregon's wage-and-hour laws.**

As noted, Plaintiff alleges Defendant failed to pay Plaintiff for all of the overtime hours that he worked.

**A.    The Law**

Under Oregon Revised Statute § 653.055(1)(a), employees are entitled to the full amount of their unpaid overtime wages. Under Oregon Revised Statute § 653.055(1)(b), employees are also entitled to statutory penalties as set out in Oregon Revised Statute § 652.150.  In order for penalty wages to be awarded under Oregon Revised Statute § 652.150, a plaintiff must establish the employer "willfully" failed to pay the wages due. "[A] determination of willfulness for purposes of ORS 652.150[, however,] is not based on a determination of 'good faith' or 'bad faith.'  Rather, the question is whether a person knows what he is doing, intends to do what he is doing, and is a free agent." *Vento v. Versatile Logic Sys. Corp.*, 167 Or. App. 272, 277 (2000)(quotation omitted).  *See also Capps v. U.S. Bank Nat.*

23 - OPINION AND ORDER

*Ass'n*, No. CV 09-752-PK, 2009 WL 5149135, at *4 (D. Or. Dec. 28, 2009)(same).

   **B.   Analysis**

      Defendant agrees employees generally are entitled to payment for all of the overtime they work.  Nevertheless, according to Defendant, an employer is entitled to summary judgment on an employee's overtime claim when a plaintiff fails to present any evidence that the employer knew the plaintiff worked the overtime hours.  Defendant relies on *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), to support its position.[4]  In *Forrester* the plaintiff "deliberately omitted the inclusion of those [overtime] hours from his time sheet even though he admittedly knew he would have been paid for those hours."  *Id.* at 414.  Accordingly, the court held employers are not liable for violations of the FLSA when "the acts of an employee prevent an employer from acquiring knowledge . . . of alleged uncompensated overtime hours."  *Id.* at 414-15.

      Defendant points to the fact that Plaintiff admits he was aware of Defendant's policy that requires employees to report all hours worked, including overtime.  Plaintiff testified at deposition that he was aware it was a violation of Defendant's

_____

      [4] Although *Forrester* was decided under the Fair Labor Standards Act (FLSA), the parties here agree the analysis of overtime claims under Oregon's wage-and-hour laws is the same as the analysis under the FLSA.

24 - OPINION AND ORDER

policy for an employee to work overtime without recording or reporting it. Plaintiff further testified he understood and, in fact, enforced Defendant's overtime reporting policies with his own subordinates. Plaintiff, nevertheless, conceded at deposition that he did not record or report the overtime he claims Defendant failed to pay and that Cole never directly told him not to report any overtime hours that he had worked. Plaintiff testified Cole told him to report his time whenever he worked.

Plaintiff, however, notes he also testified at deposition that he asked Cole what to do when a customer paged Plaintiff after 5:00 p.m., and, according to Plaintiff, Cole responded: "Well, we do have to keep the customer happy, and it is going to require you to answer your pages" but stressed "[o]vertime is not allowed." Decl. of Amy Joseph Pedersen in Support of Def.'s Mot. for Summary J., Ex. A at 16. Plaintiff testified there was not any "resolution to the . . . answering pages after hours."

Plaintiff also testified Cole engaged in intimidating behavior in the workplace, including grabbing employees' chairs, kicking employees' chairs, and clicking his pen impatiently or pacing behind employees' chairs. Kistler also testified Cole would try to be intimidating in the workplace. Plaintiff testified this behavior made Plaintiff reluctant to report all of

25 - OPINION AND ORDER

his overtime.

The Court concludes Plaintiff has established a genuine dispute of material fact exists as to whether Defendant knew or should have known that Plaintiff was working overtime without reporting it and, therefore, without being paid for all of it. Accordingly, the Court denies Defendant's Motion for Partial Summary Judgment as to Plaintiff's claim for failure to pay overtime in violation of Oregon's wage-and-hour laws.

## II. Plaintiff's wrongful-discharge claim based on Defendant's alleged failure to pay overtime.

Plaintiff also contends he was wrongfully discharged for complaining about unpaid overtime.  Defendant, however, contends Plaintiff testified he never complained to Cole or Human Resources about Defendant's alleged failure to pay Plaintiff for all of the overtime that he worked.  As the Court has noted, Plaintiff has established a genuine dispute of material fact exists as to whether Cole understood Plaintiff was working overtime and complaining about the overtime work for which he allegedly was not being paid.

Accordingly, the Court denies Defendant's Motion for Partial Summary Judgment as to Plaintiff's wrongful-discharge claim based on Defendant's alleged failure to pay Plaintiff for overtime work.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Plaintiff Mark McCauley's Motion (#25) for [Partial] Summary Judgment and **DENIES** Defendant ASML US Inc.'s Motion (#30) for Partial Summary Judgment.

IT IS SO ORDERED.

DATED this 9th day of January, 2013.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

27 - OPINION AND ORDER